## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Ernest Paul Terry,** | **Civil No. 08-1059 (PJS/SRN)** |
| **Petitioner,** | |
| **v.** | **REPORT AND RECOMMENDATION** |
| **Dwight Fondren,** | |
| **Respondent.** | |

Ernest Paul Terry, Federal Correctional Institute Sandstone, Sandstone, Minnesota 55072, pro se.

Erika Mozangue, United States Attorney's Office, 300 South 4th St., Minneapolis, Minnesota 55415, for Respondent.

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case is before the undersigned United States Magistrate Judge on Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2241 (Doc. No. 1) and Respondent's Response (Doc. No. 8). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that Petitioner's Application for Habeas Corpus Relief be denied.

## I.       BACKGROUND

Petitioner filed a petition for writ of habeas corpus on April 15, 2008, alleging the violation of his due process rights during prison disciplinary proceedings. On August 19, 2008, Respondent filed a response, seeking the dismissal of Petitioner's petition on procedural and

substantive grounds.

Petitioner is a federal inmate at the Federal Correctional Institution in Sandstone, Minnesota (FCI Sandstone).  (See Decl. of Angela Buege, ¶ 3, Attach. A to Respondent's Resp.) He is serving a 262-month sentence, followed by eight years of supervised release, imposed by United States District Judge Tinder, in the Southern District of Indiana, for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).  (Buege Decl., ¶ 3, Attach. A.) Petitioner has a projected release date of April 2, 2016, after the application of accrued Good Conduct Time (GCT) credits.  Id.  Petitioner arrived at FCI Sandstone on March 20, 2007 and previously was incarcerated at the Federal Prison Camp in Yankton, South Dakota (FPC Yankton) from June 22, 2006 until December 18, 2006.  Id.   Respondent is Dwight Fondren, Warden of FCI Sandstone.

On December 17, 2006, Petitioner was charged with Possession, Manufacture or Introduction of a Non-Hazardous Tool or Other Non-Hazardous Contraband, a Code 331 violation of Bureau of Prisons (BOP) policy.  (See Buege Decl., ¶ 5, Attach. B., Incident Report Number 1546397).  Incident Report 1546397 states that on December 16, 2006, staff at FPC Yankton discovered a large stash of contraband in the trash can and shower areas of the Durand housing unit.  (Attach. B., Incident Report Number 1546397 at 1.)  One of the contraband items was a cellular telephone which contained several programmed numbers.  Id.  Staff compared the numbers found on the cellular phone against telephone numbers in the inmate telephone system to determine if any inmates at FPC Yankton called those numbers.  Id.  Staff determined that Petitioner had called the number found on the contraband cell phone.  Id.

Incident Report 1546397, setting forth the details of the incident and the charge, was

delivered to Petitioner at 8:45 a.m. on December 18, 2006.  Id.   Petitioner, however, contends

that he did not receive the Incident Report until December 21, 2006, in violation of 28 C.F.R. §

541.15(a), (Petitioner's Mem. at 4), which requires that prison staff provide a written copy of the

applicable charges "ordinarily within 24 hours of the time staff bec[o]me aware of the inmate's

involvement in the incident."  28 C.F.R. § 541.15(a).  Upon being apprised of the charges against

him, Petitioner denied any involvement.  (Attach. B., Incident Report Number 1546397 at 1.)

Finding the Incident Report accurate and the charge valid, the investigating lieutenant forwarded

the Incident Report to the Unit Discipline Committee (UDC).  (See Buege Decl., ¶ 7, Attach. B.)

The UDC, consisting of one or more staff members delegated by the warden to hold an

initial hearing, may expunge a minor, non-repetitive incident report, determine that the inmate

committed the prohibited act and impose minor sanctions or refer the matter to the Discipline

Hearing Officer (DHO) for further action and review.  (See Buege Decl., ¶ 8, Attach. B.)  The

DHO is a one-person disciplICE hearing officer who is responsible for conducting institution

discipline hearings and who imposes appropriate sanctions for incidents of inmate misconduct.

28 C.F.R. § 541.16.

Petitioner appeared before the UDC on December 20, 2006, whereupon he was advised

of his rights. (Buege Decl., ¶ 9, Attach. B.)  Petitioner stated that he knew nothing about the

contraband and disavowed any involvement in the incident.  Id.   The UDC noted that this was

Petitioner's second level-300 incident report within the last year and, if found guilty, the DHO

could issue more sanctions than the UDC.  Id.  The UDC referred the matter to the DHO for

further hearing.  Id.   On December 20, 2006, prior to the DHO hearing, Petitioner was advised

of his rights at the DHO hearing, including the right to have a staff representative, to call

witnesses and to present evidence. (Buege Decl., ¶ 10, Attach. B., Inmate Rights at Discipline Hearing & Notice of Discipline Hearing Before the DHO, Attach. D.)

Petitioner alleges that on December 21, 2006, he was placed in administrative segregation pending investigation of the cell phone incident, and that he never received an Administrative Order detailing the reasons for his segregation. (Petitioner's Mem. in Supp. Pet. for Writ of Habeas Corpus at 2.)

On January 8, 2007, Petitioner appeared before the DHO, accompanied by a staff representative. (Buege Decl., ¶¶ 10-11, Attach. B.) Petitioner denied the charges. Advocating on Petitioner's behalf, his staff representative stated that other inmates could have heard the telephone number in question and placed it on the cell phone. (Buege Decl., ¶ 11, Attach. B., DHO Report, Attach. F.) Petitioner informed the DHO that the telephone number placed on the cell phone was that of a long-time friend, although Petitioner claimed to have no knowledge as to how the number came to be programmed into the phone. (Buege Decl., ¶ 12, Attach. B.)

Noting that no other inmates at FPC Yankton had used the number in question, nor had it on their phone lists, and that Petitioner presented no defense, the DHO found Petitioner guilty of possessing non-hazardous contraband. (DHO Report, Attach. F.) The DHO sanctioned Petitioner to a disallowance of 14 days Good Conduct Time (GCT), loss of visiting and telephone privileges for 120 days and a recommendation that Petitioner receive a disciplinary transfer. (Buege Decl., ¶ 14, Attach. B, DHO Report, Attach. F.) Petitioner received a copy of the DHO decision and was advised of his appeal rights.[1] (Buege Decl., ¶ 17, Attach. B.)

---

[1] Petitioner alleges that he did not receive a copy of the DHO report until October 31, 2007; however Respondent contends that Petitioner received a copy of the report on January 16, 2007. (Buege Decl., ¶ 16, n.3., Attach. B.)

Petitioner alleges that the following procedural irregularities violated his Due Process rights pursuant to <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556-57 (1974): (1) Petitioner was served with the Incident Report on December 21, 2006 – four days after staff became aware of the contraband incident, in violation of 28 C.F.R. § 541.15(a), which requires the issuance of an incident report ordinarily within 24 hours of the time staff become aware of an inmate's involvement in an incident; and (2) Petitioner did not receive an Administrative Order detailing the reasons for his placement in administrative detention on December 21, 2006, in violation of 28 C.F.R. § 541.22.   In addition, Petitioner alleges that the documentary and physical evidence relied upon by the fact-finder was insufficient and that he did not receive an impartial hearing.

Respondent argues that Petitioner's petition should be dismissed for failure to exhaust administrative remedies.  On the merits, Respondent contends that Petitioner was afforded adequate due process and that there was sufficient evidence supporting the DHO's decision that Petitioner committed the prohibited act.  Finally, Respondent asserts that an evidentiary hearing on this matter is unnecessary and that it may be resolved on the record.

## II.    DISCUSSION

Petitioner raises factual disputes regarding the dates on which he received notice involving the charges and/or findings against him.  As discussed below, the Court is satisfied that, when viewed in the context of the proper legal standards, these factual disputes are not material and do not preclude this Court's disposition of the petition without an evidentiary hearing.

### A.    Exhaustion of Remedies

Before filing a habeas petition challenging the fact or duration of a sentence, a prisoner

must exhaust his or her administrative remedies.  United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000), United States v. Bayless, 940 F.2d 300, 304-05 (8th Cir. 1991); see also United States v. Wilson, 503 U.S. 329, 335 (1992) (prisoner can seek judicial review of sentence computation after exhausting administrative remedies).

The Bureau of Prisons has a three-part administrative remedy program designed to address a federal inmate's concerns regarding any aspect of his or her confinement. (Buege Decl. ¶ 17.) This procedure is found in Program Statement 1330.13, Administrative Remedy Program, and is also codified in 28 C.F.R. § 542. Id.  This policy allows inmates to voice their grievances and provides an opportunity to resolve issues in-house prior to an inmate seeking judicial relief. Id.

Under the program, an inmate must first attempt informal resolution of the complaint. If unsuccessful, the inmate must then raise his or her complaint with the warden of the institution where he or she is confined. (Buege Decl. ¶ 18.) The inmate may then appeal the warden's response to the Regional Director and then again to the Central Office of the Bureau of Prisons if dissatisfied with the Regional Director's response. Id. Once an inmate has received a final response from the Central Office, he or she has exhausted his or her administrative remedies. (Id.)

The record reflects that Petitioner failed to exhaust his administrative remedies.  (See Buege Decl., ¶ 19.)  Although Petitioner contends that he did not receive a copy of the DHO report until October 31, 2007, the DHO report itself indicates that it was delivered to Petitioner on January 16, 2007 (Buege Decl., Attach. E at 2.)  Petitioner filed an appeal of the DHO report with the Regional Director of the BOP on November 8, 2007.  (Buege Decl., ¶ 19.)  The

Regional Director rejected this appeal as untimely because it was not filed within 20 days of the

incident in question (the January 8, 2007 DHO hearing).  Id.  Petitioner was advised to provide

verification on BOP letterhead documenting that the untimely appeal was not his fault.  Id.

Rather than re-file or provide verification to the BOP Regional Office, Petitioner filed an appeal

to the Central Office.  Id.  The Central Office rejected this appeal as untimely on February 12,

2008.  (Id., Attach. G, Administrative Remedy Generalized Retrieval Data Form at 3.)

Petitioner has not exhausted his administrative remedies as required prior to filing his petition in

federal court.   Even assuming the facts alleged by Petitioner as true – that he did not receive a

copy of the January 8, 2007 DHO report until October 31, 2007 – Petitioner failed to follow the

BOP policy to exhaust his remedies at the regional level before seeking relief from the Central

Office.  The Regional Office advised Petitioner to document the reason for his untimely appeal

and provide such documentation to the BOP Regional Office; instead, he filed an appeal to the

Central Office.  Accordingly, he did not follow the BOP's administrative remedy procedures.

While it is appropriate for this Court to recommend the dismissal of  the petition based on this

procedural failing, the Court will also address the merits of the case.

> **A.**     **Due Process**

Due process applies to the BOP through the Fifth Amendment, which provides

procedural protection against arbitrary actions of the government which affect an individual's

life, liberty or property interest.  U.S. Const. amend V.  A due process claim requires "some legal

entitlement, right or liberty interest that is protected under state or federal law."  Peck v. Hoff,

660 F.2d 371, 373 (8th Cir. 1981) (citations omitted).

In inmate discipline cases, courts must ensure that the BOP follows the due process

procedures established in Wolff v. McDonnell, 418 U.S. 539 (1974).  Because they are not criminal trials, prison disciplinary proceedings need not provide all of the procedural and substantive protections afforded a defendant in a criminal proceeding.  Id. at 567-68.  Instead, an inmate possesses limited procedural rights at any disciplinary action involving liberty interests, including the loss of good conduct time.  Id. at 554.

Pursuant to Wolff, due process in prison hearings is satisfied by providing the inmate with:  (1) advance written notice of the charges, no less than 24 hours before the disciplinary hearing; (2) 'a written statement by the factfinders as to the evidence relied on and reasons for (the disciplinary action);' and (3) the right to call witnesses and present documentary evidence in his defense if permitting him to do so will not jeopardize institutional safety or correctional goals.  Wolff, 418 U.S. at 540-41.  The Wolff requirements have been codified by the BOP, 28 C.F.R. § 541 eq. seq., and recognized by the Eighth Circuit, see Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002), cert. denied, 537 U.S. 870 (2002).

Here, Petitioner's due process claim is essentially a lack of notice claim.  He contends that he received the Incident Report outside the 24-hour time frame set forth in 28 C.F.R. § 541.15(a) and that he failed to receive a copy of the Administrative Detention Order detailing the reasons for his detention, contrary to 28 C.F.R. § 541.22(b).

As to the Incident Report, the document states, "staff became aware of the incident" (i.e., Petitioner's alleged connection to the contraband cell phone) on December 16, 2006 at 10:57 p.m. (Buege Decl., Attach. B.)  The Incident Report was prepared on December 17, 2006 at 9:00 p.m.  Id.  Petitioner contends that he received Incident Report 1546397 on December 21, 2006, in violation of the 24-hour time frame required by 28 C.F.R. § 541.15(a).  Respondent argues

that Petitioner received the document on December 18, 2006, at 8:45 a.m., which is reflected in the Incident Report itself.

Petitioner correctly cites 28 C.F.R. § 541.15(a) for the proposition that written notice of the violation of a BOP rule shall be given to an inmate ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident. In this case, the 24 hours would have elapsed on December 17, 2006 at 10:57 p.m, given that the incident report states that staff became aware of the incident on December 16, 2006 at 10:57 p.m. Regardless of Petitioner's claim that he did not receive the document until December 21, 2006, the BOP did not meet the requirements of the 24-hour rule given their own representations. The Court notes that along the bottom margin of the Incident Report form, the standard form language indicates that the affected inmate receive the document "within 24 hours of Part I Preparation." (Buege Decl., Attach. B) (emphasis added). Respondent argues that Petitioner received the report within 11 hours after it was written or prepared, in compliance with the BOP regulation. While Respondent may have complied with the pre-printed language on the Incident Report form, Respondent did not comply with 28 C.F.R. § 541.15(a), nor does the pre-printed language comply with that regulation.

Having determined that Respondent failed to comply with BOP regulations regarding the provision of an Incident Report within 24 hours, the Court turns to whether the BOP's non-compliance amounted to a due process violation. While an agency's failure to follow its own ordinances or regulations may constitute deprivation of property without due process, Derrickson v. St. Louis Bd. of Education, 703 F.2d 309, 315 (8th Cir. 1983), an agency's failure to comply in every respect does not in every case require a remand. See Von Kahl v. Brennan, 855

F.Supp.1413 (M.D. Pa. 1994).   Instead, courts examine the specific facts to determine if a

constitutional deprivation occurred.  See Derrickson, 703 F.3d at 315 (finding that, as a matter of

law, the defendants' alleged deviations from the regulations did not amount to a constitutional

deprivation.)

In Von Kahl, 855 F.Supp. at 1418, faced with similar facts, the court held that the

prisoner there was aware of the nature and basis of the facts against him and never alleged a lack

of knowledge or a lack of understanding of the charges.  The court also evaluated the prisoner's

notice claim in the context of the significant safeguards afforded by prison regulations designed

to provide inmates with the notice mandated by Wolff.  Id.   Accordingly, the court held that the

prisoner's due process rights were not violated.  Id.

The Court is persuaded that Petitioner had adequate notice of the charges against him and

of the UDC hearing.  On the day of the UDC hearing, Petitioner signed two documents: Inmate

Rights at Discipline Hearing and Notice of Discipline Hearing Before the DHO.  (Buege Decl.,

Attach. D.)   These documents, signed 19 days in advance of the DHO hearing, advised

Petitioner of his rights at the DHO hearing, set forth the alleged violations, offered the services

of a staff representative at the hearing and noted Petitioner's right to call witnesses and present

documentary evidence.  (Id.).  Petitioner signed and dated both documents on December 20,

2006.  Id.

As between the Incident Report itself, which indicates that Petitioner received a copy on

December 17, 2006, and Petitioner's claim that he received a copy on December 21, 2006, the

Court finds the document itself persuasive.  Although Petitioner alleges a violation of BOP

regulations with respect to documentation, he does not allege that he did not actually know or

understand the charges against him. Petitioner had notice of the December 20, 2006 UDC hearing and the January 8, 2007 DHO hearing before they occurred.  Petitioner's staff representative was present at the DHO hearing and made a statement and Petitioner was provided a copy of the written DHO decision.   There is no evidence that Petitioner was prejudiced.  In sum, Petitioner received all the due process requirements set forth in <u>Wolff</u>, including advance written notice of the charge; a written statement as to the evidence relied upon by the fact finder; and the right to call witnesses and present documentary evidence in his defense.   <u>See</u> <u>Wolff</u>, 418 U.S. at 540-41.

Petitioner also claims a violation of due process for his failure to receive an administrative detention order detailing the reasons for his detention pending investigation, contrary to 28 C.F.R. § 541.22(b).  Petitioner alleges that on December 21, 2006, staff at FPC Yankton placed him in administrative detention without providing him a copy of the administrative detention order.  (Pet.'s Petition, Disciplinary Proceeding Record, Attach. A at 3.)  Respondent states that it was unable to locate a copy of the administrative detention order. (Resp.'s Resp. at 2, n.1.)

Administrative detention is the confinement of an inmate in a special housing unit or cell where the inmate is either alone or confined with other inmates in order to remove the inmate from the general prison population.  28 C.F.R. § 541.22.  The warden may place an inmate in administrative detention when the "inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate: (1) is pending a hearing for a violation of Bureau regulations; and (2) is pending an investigation of a violation of Bureau regulations." 28 C.F.R. §

11

541.22(a)(1)-(2).  According to BOP regulations, the warden is required to issue an administrative detention order detailing the reasons for the inmate's detention, with a copy given to the inmate within 24 hours of the inmate's placement in administrative detention "unless this delivery is precluded by exceptional circumstances."  28 C.F.R. § 541(b).

Petitioner claims that he received no such order.  Respondent cannot locate any such order, but contends that its failure to locate any such order "has no bearing on Petitioner's due process rights regarding the incident report and subsequent DHO hearing."  This question, however, is before the Court in light of the BOP's alleged failure to provide Petitioner with an administrative detention order.

Petitioner was confined on December 21, 2006 due to the pending hearing on January 8, 2007.  28 C.F.R. § 541.22(a)(1).   The staff at FPC Yankton did not follow the BOP regulation which required them to provide Petitioner with an administrative detention order.[2]  However, despite the failings of staff at FPC Yankton, as of December 20, 2006, Petitioner was well-aware of the charges against him which were the basis for his confinement in administrative detention on December 21, 2006.  By the date of his confinement in administrative detention (December 21, 2006), BOP staff had given him a copy of the Incident Report (December 18, 2006); Petitioner had received and signed copies of Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing (December 20, 2006); and the initial hearing before the UDC was held (December 20, 2006).  At the UDC hearing, Petitioner testified and denied his involvement in the contraband incident.  (Buege Decl., Attach. B.)

---

[2]The Court must assume that no order existed, as Respondent was unable to find any such order.

Although the Court is troubled by BOP's failure to provide Petitioner with an administrative detention order, the Court concludes that due process was satisfied. Petitioner does not allege that he was unaware of the charges that led to his administrative detention, nor was he prevented or hindered from making a statement or presenting evidence before the UDC. There is no evidence that Petitioner was prejudiced by the BOP's failure to give him an administrative detention order. Notably, Petitioner does not claim that there was no basis for his detention. Accordingly, the Court recommends that Petitioner's due process alleging lack of notice claims be dismissed.

### B.    Sufficiency of Evidence Supporting the DHO Decision

Petitioner challenges the sufficiency of the evidence supporting the DHO's decision that Petitioner committed the prohibited act of "possession, manufacture or introduction of a non-hazardous tool or other non-hazardous contraband." Specifically, Petitioner argues that the element of possession was lacking, as the cellular phone was not found on Petitioner's person, living area or on anything belonging to him. Respondent contends that there is sufficient evidence in the record, as reflected in the DHO's decision, to support the DHO's determination that Petitioner committed the prohibited act.

The decision of a prison disciplinary officer is entitled to considerable deference by a reviewing court. If the requirements of due process are met, the decision of the prison discipline officer must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 447 (1985).

> This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

13

> evidence. Instead, the relevant question is whether there is any evidence in the
> record that could support the conclusion reached by the disciplinary board.

 Id. at 455-56 (citations omitted).  Once the reviewing court determines that there is "some

evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by

petitioner and uphold the finding of the DHO.  Id. at 457.  This Court's review is thus very

limited.

Here, Petitioner received advance written notice of the January 8, 2007 DHO hearing.

(Buege Decl., Attach. F.)  After being advised of his due process rights, Petitioner denied the

charges.  Id.  Petitioner's staff representative raised the issue that any of the other inmates could

have heard the telephone number in question and programmed it into the cell phone.  (Buege

Decl., Attach. F.)

The DHO also considered Incident Report 1546397 and inmate telephone usage and

cellular search reports showing that Petitioner was the only inmate at FPC Yankton to have the

number in question on his telephone list.  Id.   The DHO noted Petitioner's denial of the incident

and that Petitioner acknowledged that the number in question belonged to a long-time friend.  Id.

In addition, the DHO considered Petitioner's statements that he had no knowledge as to how the

phone number became programmed into the cell phone.  Id.   Finally, the DHO considered

Petitioner's acknowledgement of having made 20-25 telephone calls from October through

December 5, 2006, using the authorized inmate telephone system.  Id.

Having reviewed the evidence, including Petitioner's statement, the DHO concluded that

Petitioner lacked credibility and gave the greater weight of the evidence to the reporting officer's

written statement in conjunction with copies of the inmate telephone usage, showing that

Petitioner alone had used the telephone number in question.  Id.  Furthermore, the DHO found

that Petitioner "refused to answer pointed questions concerning how the number could have been programmed into the cell phone found as contraband. . . ." Id.

The Court is satisfied that the DHO's determination met the "some evidence" standard of Superintendent v. Hill.  The DHO considered testimonial and documentary evidence, including the statements of Petitioner.  The DHO also explained his credibility findings.  As the DHO's decision was based on sufficient evidence, it is entitled to this Court's deference and Petitioner's claim of a due process violation based on insufficient evidence should be denied.

### C.       Impartiality

Petitioner's final ground for habeas relief is styled as a challenge to the impartiality of the hearing, however, the content of his argument restates his sufficiency of the evidence challenge. Although Petitioner did not substantively contest the DHO's impartiality, the Court concludes that the DHO was an impartial fact finder as he did not write the incident report, was not a witness to the incident, nor did he investigate the matter.  (Angela Buege Decl., ¶ 11.)  The Court therefore recommends that Petitioner's petition be denied.

### III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED that:**

1.      Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241

(Docket No. 1) be **DENIED**; and

2.      This action be **DISMISSED WITH PREJUDICE.**

Dated: November 3, 2008

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 18, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.